_____

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: March 3, 2020**

**The Order of the Court is set forth below. The docket reflects the date entered.**

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **TERRA LEIGH WEBB,** | **CASE NO. 19-00915-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **BAPTIST MEMORIAL HEALTH CARE CORPORATION** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. 19-00025-NPO** |
| **TERRA LEIGH WEBB** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

There came on for consideration the Defendant's Motion for Summary Judgment and

Memorandum in Support (the "Summary Judgment Motion") (Adv. Dkt. 20) [1] filed by Terra Leigh

Webb (the "Debtor"); Baptist Memorial Health Care Corporation's Response in Opposition to

Defendant's Motion for Summary Judgment and Memorandum in Support (the "Response") (Adv.

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. ____)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. ____)". Page numbers are to the numbers automatically generated by the Court's CM/ECF system and not to the document's native pagination.

Dkt. 22) filed by Baptist Memorial Health Care Corporation ("Baptist"); Baptist Memorial

Healthcare Corporation's Statement of Undisputed Material Facts in Support of its Response in

Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support (the

"Statement of Undisputed Material Facts") (Adv. Dkt. 23) filed by Baptist; and the Defendant's

Reply in Support of Motion for Summary Judgment (the "Reply") (Adv. Dkt. 24) filed by the

Debtor in the Adversary.

### Jurisdiction

The Court has jurisdiction over the subject matter of and the party to this proceeding to 28

U.S.C. § 1334.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(I), and (O).  Notice of the Summary Judgment Motion was proper under the circumstances.

### Facts[2]

1.      Baptist is a nonprofit hospital corporation with its principal place of business

located at 350 N. Humphreys Blvd., Memphis, Tennessee.  (Adv. Dkt. 1 at 1).

2.      Baptist and its affiliates use an electronic medical record software system, EpicCare

Inpatient Procedure Orders (the "Epic Software"), developed by Epic Systems Corporation

("Epic").  Employees must receive training from Epic and pass a certification exam before using

the Epic Software.  (Adv. Dkt. 23-1 at 2).

3.      In March of 2017, Baptist hired the Debtor as an "Associate Clinical Analyst—

Epic Certified" on the condition the Debtor secure certification in the use of the Epic Software.

(Adv. Dkt. 23-1 at 2).  Thereafter, Baptist and the Debtor entered into the Memorandum of

Agreement Between Terra Leigh Webb and Baptist Memorial Health Care Corporation (the

---

[2] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

"Agreement") (Adv. Dkt. 1-1) in which Baptist agreed to incur costs totaling approximately $12,000.00 (the "Epic Certification Cost") for the Debtor to enroll in, attend, and successfully complete the training necessary to secure certification on the Epic Software. (*Id.* at 1). The Epic Certification Cost included costs for "tuition, travel, lodging, meals, salary, temporary replacement(s) as well as direct and indirect costs to Baptist resulting from [the Debtor's] time away from work for training, testing, and additional on-the-job training." (*Id.*). Baptist agreed to forgive repayment of the Epic Certification Cost if the Debtor continued working for Baptist in a full-time position for at least three (3) years from the date she obtained the required certification. (*Id.* at 2). For each month of satisfactory work, the Debtor would "earn forgiveness of the Total Cost at the rate of 1/36th of the Total Cost." (*Id.*). In the event she resigned her employment with Baptist or Baptist terminated her employment for cause, the Debtor agreed to repay the Epic Certification Cost less a forgiveness adjustment equal to 1/36th of the Epic Certification Cost for each month of satisfactory work she performed. (*Id.*). If Baptist ended the Debtor's employment because of her failure to secure certification, the Debtor would have no obligation to repay the Epic Certification Cost as long as she used her best efforts to become certified. (*Id.*). The Debtor agreed to pay Baptist's reasonable attorneys' fees and other costs incurred by Baptist to enforce the Agreement. (*Id.* at 3).

5.      The Debtor completed the training and obtained the certification from Epic on May 12, 2017. Approximately thirteen (13) months later, on July 6, 2018, the Debtor voluntarily resigned her employment with Baptist. Her resignation before the expiration of three (3) years constituted a breach of the Agreement for which the Debtor owes Baptist a total of $7,666.66 (the "Epic Certification Debt") after applying the forgiveness adjustment earned from May of 2017 through July of 2018.

6.      On January 17, 2019, Baptist filed a lawsuit against the Debtor in the General Sessions Court of Shelby County, Tennessee (the "General Sessions Court"), seeking to recover $7,666.66 in damages resulting from the Debtor's breach of the Agreement, as well as attorneys' fees and costs.  (Adv. Dkt. 1-2).

7.      The Debtor commenced the Bankruptcy Case by filing a petition for relief under chapter 7 of the U.S. Bankruptcy Code on March 8, 2019.  (Bankr. Dkt. 1).  In her bankruptcy schedules, the Debtor listed Baptist as an unsecured creditor holding a claim in the amount of $7,666.66.  (Bankr. Dkt. 6 at 3).

8.      On June 4, 2019, Baptist initiated the Adversary by filing the Complaint to Determine Dischargeability of Debt (the "Complaint") (Adv. Dkt. 1).  In the Complaint, Baptist sought an order excepting the Epic Certification Debt from discharge as an "Educational Benefit Loan" pursuant to 11 U.S.C. § 523(a)(8).[3]  (Adv. Dkt. 1 at 1, 4).  Baptist attached as exhibits to the Complaint copies of the Agreement and the summons issued in the General Sessions Court. (Adv. Dkt. 1-1, 1-2).  The Debtor filed the Answer (Adv. Dkt. 10) admitting the existence and amount of the Epic Certification Debt but denying that the Epic Certification Debt is nondischargeable.  The Debtor requested attorneys' fees and costs pursuant to § 523(d).  (Adv. Dkt. 10 at 2).

9.      Pursuant to § 727, the Debtor received a discharge in the Bankruptcy Case on June 21, 2019.  (Bankr. Dkt. 15).

---

[3] Hereinafter, all code sections refer to the U.S. Bankruptcy Code (the "Code") found at Title 11 of the U.S. Code, unless otherwise noted.

10.     On January 13, 2020, the Debtor filed the Summary Judgment Motion in the Adversary asserting that the Epic Certification Debt is not a loan for educational purposes under § 523(a)(8) as a matter of law and, therefore, is dischargeable.

11.     Baptist filed the Response and the Statement of Undisputed Material Facts on February 3, 2020.  In the Response, Baptist asserts that a genuine issue of material fact exists as to whether the Epic Certification Debt is nondischargeable under § 528(a)(8)(A)(i) because "the purpose of the loan was to obtain the required education and training necessary to obtain certification in the Epic system software used at [Baptist]."  (Adv. Dkt. 22 at 7-8).  Baptist further assets that the Debtor's "education for the position to which she was hired was not complete without receiving . . . additional education" from Epic in order to pass the certification exam.  (*Id.*).

12.     The Debtor filed the Reply on February 18, 2020, alleging that Baptist did not incur the Epic Certification Cost for an educational purpose but to entice the Debtor to accept employment with Baptist "by paying for the training required for the job[.]"  (Adv. Dkt. 24 at 4).  The Debtor further asserts that Baptist paid the Epic Certification Cost for the purpose of "creating qualified long[-]term employees."  (*Id.* at 5).

**Discussion**

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). Further, to prevail on a motion for summary judgment, a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).

The movant carries the burden "of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Put simply, "there are two (2) elements that must be met in order for summary judgment to be appropriate: (1) there must be no genuine dispute of the material fact; and (2) the undisputed facts are such that the movant is entitled to judgment as a matter of law." *Greenpoint AG, LLC v. Kent (In re Kent)*, 554 B.R. 131, 139 (Bankr. N.D. Miss. 2016). The court looks to the substantive law to determine if a fact is material. *Id.* at 139-40.

If the movant meets the initial burden, "the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial." *Quackenbush v. U.S. Dep't of Educ. (In re Quackenbush)*, No. 16-00044-NPO, 2018 WL 4056993, at *3 (Bankr. S.D. Miss. Aug. 24, 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Summary judgment is proper where "the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

**B.      Dischargeability Under § 523(a)(8)**

Section 523(a)(8) excepts educational benefits and loans from the discharge granted under

§ 727 unless excepting the debt would impose an undue hardship.  Section 523(a)(8) provides, as

follows:

> (a)      A discharge under section 727 . . . of this title does not discharge an
> individual debtor from any debt—
>
>> (8) unless excepting such debt from discharge under this paragraph would
>> impose an undue hardship on the debtor and the debtor's dependents, for—
>>
>>> (A)(i) an educational benefit overpayment or loan made, insured, or
>>> guaranteed by a governmental unit, or made under any program funded in
>>> whole or in part by a governmental unit or nonprofit institution; or
>>>
>>>> (ii) an obligation to repay funds received as an educational benefit,
>>>> scholarship, or stipend; or
>>>
>>> (B) any other educational loan that is a qualified education loan, as defined
>>> in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
>>> debtor who is an individual[.]

11 U.S.C. § 523(a)(8).   The Fifth Circuit Court of Appeals has noted that "[c]ourts have

emphasized two purposes when analyzing § 523(a)(8):  (1) preventing undeserving debtors from

abusing educational loan programs by declaring bankruptcy immediately after graduating; and (2)

preserving the financial integrity of the loan system." *Murphy v. Pa. Higher Educ. Assistance*

*Agency (In re Murphy)*, 282 F.3d 868, 873 (5th Cir. 2002).

Baptist does not specify in the Complaint which category of educational debt in

§ 523(a)(8)(A) allegedly supports its nondischargeability claim.  The exception to discharge in

§ 523(a)(8) applies to three categories of educational debt:  (1) educational loans made by a

governmental unit or nonprofit institution; § 523(a)(8)(A)(i); (2) obligations to repay funds

received as an educational benefit, scholarship, or stipend, § 523(a)(8)(A)(ii); and (3) certain

"qualified education" loans under the Internal Revenue Code, § 523(a)(8)(B).  Because Baptist

argues in the Response that the Epic Certification Debt falls within § 523(a)(8)(A)(i), the Court

examines the Epic Certification Debt under § 523(a)(8)(A)(i) for purposes of the Summary

Judgment Motion.[4]

Under § 523(a)(8)(A)(i), the creditor has the burden to establish the following three

elements: "(1) the existence of a debt; (2) made for an educational loan; (3) made, insured, or

guaranteed by a governmental unit, or made under any program funded in whole or in part by a

governmental unit or nonprofit institution." *Pappas v. The Tex. Higher Educ. Coordinating Bd.

(In re Pappas)*, 517 B.R. 708, 717-18 (W.D. Tex. 2014) (quoting *Tollison v. Suntech, Inc. (In re

Tollison)*, 305 B.R. 656, 659 (N.D. Miss. 2004)).   The creditor must prove these elements by a

preponderance of the evidence.   *Grogan v. Garner*, 498 U.S. 279, 291 (1991).   Moreover,

discharge exceptions in § 523(a) must be construed narrowly and in favor of the debtor in order to

further the Code's purpose of giving debtors a fresh start.  *Miller v. J.D. Abrams Inc. (In re Miller)*,

156 F.3d 598, 602 (5th Cir. 1998).

The first and third elements of Baptist's nondischargeability claim are undisputed.  The

parties agree that the Debtor owes Baptist $7,666.66 for the repayment of a loan and that Baptist

is a nonprofit institution.  As to the second element, the parties disagree whether Baptist made a

loan to the Debtor for "educational" purposes within the meaning of § 523(a)(8)(A)(i).

---

[4] Because both § 523(a)(8)(i) and § 523(a)(8)(ii) require an educational purpose, the characterization of the Epic Certification Debt as a loan or benefit does not change the result reached.  *See Crocker v. Navient Solutions, L.L.C. (In re Crocker)*, 941 F.3d 206 (5th Cir. 2019).

A majority of courts, including the Fifth Circuit, have held that the purpose of a loan determines whether it is "educational."[5]  *Murphy*, 282 F.3d at 870; *see Sokolik v. Milwaukee Sch. of Eng'g (In re Sokolik)*, 635 F.3d 261, 266 (7th Cir. 2011); *DePasquale v. Boston Univ. Sch. of Dentistry (In re DePasquale)*, 225 B.R. 830, 832 (1st Cir. BAP 1998).  This approach recognizes that the congressional purpose of § 523(a)(8) is to ensure the availability of educational financing. *Tift Cty. Hosp. Auth. v. Nies (In re Nies)*, 334 B.R. 495, 501 (Bankr. D. Mass. 2005).  Congress attempted to achieve its goal by "principally protecting government entities and non-profits— *places which lend money or guarantee loans to individuals for educational purposes*—from bankruptcy discharge." *Id.* (quotation & citation omitted).  "[T]he statute itself is "concerned with the circumstances surrounding the origination of the loan, rather than what benefits the debtor may have derived." *Rumer v. Am. Educ. Servs. (In re Rumer)*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012).  "It is the purpose, not the use, of the loan" that controls whether a loan is dischargeable under § 523(a)(8). *Murphy*, 282 F.3d at 870.

Educational loans are those "made without business considerations, without security, without cosignors, and relying for repayment solely on the debtor's future increased income resulting from the education." *U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986).  Bankruptcy courts have concluded that loans made for a business purpose are not "educational" obligations under § 523(a)(8). *Nies*, 334 B.R. at 505; *Comty. Mem'l Hosp. v.*

---

[5] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the structure of § 523(a)(8) and added a new subsection.  Because the BAPCPA did not alter the language in § 523(a)(8)(A)(i) that governs the parties' dispute, pre-BAPCPA case law remains relevant in determining whether the Epic Certification Debt is "educational." *Crocker*, 941 F.3d at 223 ("All we see is a change to the structure of the overall statute, but no real change to the language that controls the case before us.").

*Gordon (In re Gordon)*, 231 B.R. 459, 463-64 (Bankr. D. Conn. 1999); *A.L. Lee Mem'l Hosp. v. McFadyen (In re McFadyen)*, 192 B.R. 328, 331 (Bankr. N.D.N.Y. 1995).

In *Nies*, for example, the debtor graduated from medical school in 1995 and became a licensed practitioner in Massachusetts and Georgia. *Nies*, 334 B.R. at 497. In 1999, the debtor entered into an agreement with Tift County Hospital, a nonprofit corporation, to relocate to Tift County, Georgia, as part of a recruitment program that provided physicians with the "opportunity to receive loans up to $75,000 to repay their student loans." *Id.* The agreement explained that Tift County Hospital's participation in the program was "*in furtherance of its purpose of providing medical care to the public* in medical fields that [had] been determined by the Hospital to present a need that [was] not currently being serviced . . . in the community." *Id.* at 498 (emphasis added). As consideration for the debtor's relocation to Georgia, Tift County Hospital agreed to provide the debtor with a $75,000 loan that allowed him to repay a portion of his student debt. *Id.* If the debtor performed medical services for four (4) years, Tift County Hospital would forgive the loan. If the debtor moved his practice from Tift County before that time frame, the entire principal of the loan would be due in full. *Id.* The debtor defaulted under the terms of the agreement when he moved to Chicago in 2001. *Id.* Thereafter, the debtor and his wife filed a joint chapter 7 bankruptcy case and argued that the obligation to the Tift County Hospital was dischargeable because it was not an educational loan protected by § 523(a)(8). *Id.* at 498-99.

After reviewing the legislative history of § 523(a)(8), the *Nies* court noted that § 523(a)(8) was the byproduct of an amendment to section 439(A)(a) of the Higher Education Act of 1965. *Id.* at 501 (citing *Dep't of Mental Health v. Shipman (In re Shipman)*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)). "[T]his direct link to the federal education statute is an excellent indication that the central issue in determining dischargeability is whether the funds were for educational purposes,

19-00025-NPO   Dkt 25   Filed 03/03/20   Entered 03/03/20 08:35:17   Page 11 of 14

not whether the funds constituted a loan." *Id.* (quoting *Shipman*, 33 B.R. at 82). Focusing on the substance of the transaction, the *Nies* court found that the agreement "reflected a non-educational business purpose for the loan, namely the recruitment of a physician for an underserved rural area." *Id.* at 505. The court concluded that the "primary intent" of the hospital in "entering into the loan was to further the Hospital's central charitable and business mission." *Id.*; *see also Santa Fe Med. Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342, 349 (3d Cir. 1995) (holding that the purpose of the loan from the hospital was not to facilitate the doctor-debtor's education, "which had long since been completed," but instead for the hospital to secure her services); *Gordon*, 231 B.R. at 464-65 (dismissing a nondischargeabilty claim because the advance served a business purpose by encouraging the debtor to establish a medical practice that furthered the hospital's mission). "The terms of the Hospital's Agreement inextricably linked satisfaction of the $75,000 loan to [the debtor's] fulfillment of certain service and hospital staffing requirements." *Nies*, 334 B.R. at 506.

The bankruptcy court in *McFadyen* similarly found that a nonprofit hospital's loan did not constitute an educational loan within the scope of § 523(a)(8) where the loan was "inextricably tied" to the debtor's employment. *McFadyen*, 192 B.R. at 332-33. There, Crouse Irving Memorial Hospital agreed to pay the debtor's tuition for completion of its nursing program, and the debtor, in turn, agreed to work for Crouse Irving Memorial Hospital for three (3) years. *Id.* at 330. In the event the debtor terminated her employment before the end of the three (3)-year period, the debtor agreed to reimburse Crouse Irving Memorial Hospital for the cost of the tuition plus 15% interest. *Id.* The court found that "[t]he monies paid to Crouse Irving were inextricably tied to the Debtor's employment . . . as a registered nurse for a period of three years." *McFadyen*, 192 B.R. at 332-33. As such, the court concluded that the purpose of the loan was not educational; rather, "it was

intended to benefit [Crouse Irving Memorial Hospital] by assuring that it had a qualified nursing staff on a relatively long-term basis." *Id.* at 333.

**C.      Analysis**

As in *Nies* and *McFadyen*, Baptist's purpose in incurring the Epic Certification Cost was not to enable the Debtor to pursue an education.  Baptist had a business purpose—to provide the Debtor the training necessary for her to use the Epic Software.  The terms of the Agreement evidence this purpose.  The Agreement provides that Baptist was "using the Epic software system" and expected that the Debtor would be "performing functions related to the Epic software system, requiring appropriate training . . . and certification."  (Adv. Dkt. 1-1 at 1).  The Agreement further provides explicitly that the Debtor's continued employment was contingent on securing certification, and that Baptist was willing to incur the costs associated with training the Debtor in exchange for "continued, enhanced employment."  (*Id.* at 2).  As such, the Court finds that there is no genuine dispute that the Epic Certification Cost was "inextricably tied to the [Debtor's] employment with the Plaintiff." *McFadyen*, 192 B.R. at 332.  Although the Agreement notes that having a certification from Epic "is highly marketable and will be of great value to [the Debtor]," the terms of the Agreement, along with the undisputed facts surrounding its execution, do not support a finding that Baptist incurred the Epic Certification Cost to increase the Debtor's marketability.  To the contrary, Baptist did so to retain the Debtor as a long-term employee.  Baptist has failed to show a genuine dispute that the Epic Certification Debt is educational in purpose within the meaning of § 523(a)(8)(A)(i).  Accordingly, the Court finds that the Debtor is entitled to summary judgment as a matter of law that the Epic Certification Debt is dischargeable.

**Conclusion**

Once a summary judgment movant presents sufficient, competent evidence to entitle it to summary judgment as a matter of law, the nonmovant cannot rest merely on bare allegations in its pleadings but must set forth specific facts demonstrating a genuine issue for trial. *Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 545 (5th Cir. 2000). Here, Baptist has "failed to make a sufficient showing on [the] essential element[s] of [its] case with respect to which [it] had the burden of proof." *Celotex*, 477 U.S. at 323. There is no genuine dispute that the Epic Certification Debt fails to fall within the scope of educational loans excepted from discharge under § 523(a)(8)(A)(i). The Court, therefore, finds that the Debtor is entitled to summary judgment as a matter of law that the Epic Certification Debt is dischargeable.

The Court will not enter a final judgment at this time because of the Debtor's request in the Answer for attorneys' fees and costs pursuant to § 523(d). (Adv. Dkt. 10 at 2). The Court, therefore, will provide the Debtor an opportunity to file a motion establishing the basis for her request[6] along with a supporting fee itemization and will grant Baptist an opportunity to respond. If no such motion is filed within fourteen (14) days of this Opinion, the Court will enter a final judgment dismissing the Adversary without an award of attorneys' fees or costs.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Summary Judgment Motion is hereby granted.

IT IS FURTHER ORDERED AND ADJUDGED that the Epic Certification Debt is dischargeable in the Bankruptcy Case.

---

[6] Under § 523(d), when a creditor seeks but is denied a determination that a consumer debt is dischargeable under § 523(a)(2), the debtor is entitled to an award of attorneys' fees if the creditor's position was not "substantially justified" and no "special circumstances" would make the award unjust. *Carthage Bank v. Kirkland*, 121 B.R. 496, 499-500 (S.D. Miss. 1990). The Court notes that Baptist requested a discharge determination under § 523(a)(8), not § 523(a)(2).

IT IS FURTHER ORDERED AND ADJUDGED that the Debtor shall file a motion for attorneys' fees and costs along with a supporting fee itemization within fourteen (14) days of the date of this Opinion.  *See* MISS. BANKR. L.R. 7054-1.  Baptist shall file a response within fourteen (14) days after the Debtor files her motion.  The Court will enter a final judgment after disposition of the Debtor's § 523(d) motion or, if no motion is filed, after expiration of the fourteen (14)-day period.

##END OF OPINION##